**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA, ex rel.,
                              *Plaintiff,*

          and

CHARLOTTE RAE BLY-MAGEE,
                    *Plaintiff-Appellant,*

          v.

BRENDA PREMO; CATHERINE
CAMPISI; JIM KAY; WARREN HAYES,
a/k/a Ronald E. Glousman, MD;
KEITH S. FOSTER; EDNA LARSON;
KENNETH SMEDBERG; VERNE
ALBRIGHT; LOS ANGELES COUNTY
DEPARTMENT OF MENTAL HEALTH,
e/s/a County of Los Angeles; LOS
ANGELES COUNTY OFFICE OF
EDUCATION,
                    *Defendants-Appellees.*

No. 05-55556

D.C. No.
CV-01-08716-DDP

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
February 13, 2006—Pasadena, California

Filed December 13, 2006

Before: William C. Canby, Jr., John T. Noonan, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Canby

19417

**COUNSEL**

Joseph E. Deems, Sherman Oaks, California, for the appellant.

Kenneth G. Lake, Deputy Attorney General, Los Angeles, California; Joseph L. Stark, Joseph L. Stark & Associates, Santa Clarita, California; for the defendants-appellees.

**OPINION**

CANBY, Circuit Judge:

In 2001 Charlotte Bly-Magee filed this *qui tam* action under the False Claims Act, 31 U.S.C. § 3729. She accuses the California Department of Rehabilitation ("CDR") and its employees of defrauding the federal government. The district court dismissed her Second Amended Complaint, without leave to amend. The district court held that Bly-Magee had failed to overcome the False Claims Act's jurisdictional bar that precludes private actions based on public disclosure of allegations unless the relator who is bringing the action is an original source of the information. *See* 31 U.S.C. § 3730(e)(4)(A). Bly-Magee now appeals.

### *Background*

For over a decade, Bly-Magee has been pursuing *qui tam* actions against CDR. She initially suspected CDR of filing false claims while she was serving as the executive director of Southern California Rehabilitation Services, a non-profit organization that receives federal and state funds to serve the disabled. Shortly after leaving Southern California Rehabilitation Services, she filed the first of three *qui tam* actions ("*Bly-Magee I*"). The government declined to intervene in this action.[1] A district court granted summary judgment against Bly-Magee, and she did not appeal.

Despite this loss, Bly-Magee continued to investigate what she believed was CDR's misappropriation of federal funds. In 1997 she filed a second *qui tam* action ("*Bly-Magee II*") against CDR. The government again declined to intervene. The district court dismissed the action and Bly-Magee appealed. In a memorandum disposition filed contemporaneously with this opinion, we have affirmed the district court's dismissal of *Bly-Magee II*.

While *Bly-Magee II* was pending, Bly-Magee filed her third *qui tam* suit ("*Bly-Magee III*"), which is the subject of this appeal. She accuses CDR and various CDR employees of submitting false claims stemming from an alleged "kickback" scheme with state agencies. The district court dismissed the Second Amended Complaint for failure to overcome the False Claims Act's jurisdictional bar. Bly-Magee now seeks review of this decision.

---

[1]The False Claims Act provides for a private *qui tam* complaint, which asserts a claim in the name of the Government, to be served on the Government and filed under seal for at least 60 days. During that period (or extensions of it), the Government may elect to intervene and conduct the litigation, or may decline and leave the conduct of the litigation to the private relator. *See* 31 U.S.C. § 3730(b)(2), (3) & (4).

We have jurisdiction under 29 U.S.C. § 1291 to review the district court's final order. We review de novo the dismissal for lack of subject matter jurisdiction. *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 392 (9th Cir. 2002), *amended by* 319 F.3d 1078 (9th Cir. 2003). We affirm in part, reverse in part, and remand.

### *Discussion*

### 1.  Public Disclosure Through *Bly-Magee II*

**[1]** The False Claims Act deprives the district court of jurisdiction over a *qui tam* action that is based on allegations or transactions previously publicly disclosed, unless the relator is the original source of the allegations. 31 U.S.C. § 3730(e)(4)(A). More specifically, the False Claims Act provides:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

*Id*. The district court lacked jurisdiction over the complaint's allegations of false claims that occurred on or before June 1997 because they were publicly disclosed in *Bly-Magee II* and because Bly-Magee did not establish that she was the original source of the information.[2]

---

[2]Bly-Magee has the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *United States ex rel. Harshman v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1018 (9th Cir. 1999).

**[2]** In *Bly-Magee II*, Bly-Magee accused the defendants of violating the False Claims Act from October 1992 to June 1997. In *Bly-Magee III*, she accused the defendants of similar violations from fiscal year 1995-1996 to fiscal year 1999-2000. Thus, there is approximately a two-year overlap between the complaints. Both complaints allege that the defendants violated federal procurement standards in awarding contracts, forced the Government to "purchase unnecessary and duplicative services," gave contracts to irresponsible parties, and falsely certified that they had conducted audits. The allegations in *Bly-Magee III* that occurred during the complaints' overlapping time period—on or before June 1997 — were therefore publicly disclosed in *Bly-Magee II*. *See A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000) (requiring public disclosure "of the 'allegations or transactions' giving rise to the relator's claim, as opposed to 'mere information' ") (internal citation omitted).

**[3]** Bly-Magee has not demonstrated by a preponderance of the evidence that she was the original source of the information upon which these allegations were based. *See Harshman*, 197 F.3d at 1018. Her employment at Southern California Rehabilitation Services and her claim that she conducted her own investigation are insufficient to show that she had direct knowledge of a scheme to submit false claims. *See* 31 U.S.C. § 3730(e)(4)(B) (defining an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based . . . ."). Bly-Magee submitted a declaration to the district court that provided a lengthy explanation of her involvement with Southern California Rehabilitation Services and her investigation, but her recital is fatally short of specifics on the most material point: she still failed to show direct and independent knowledge of the information underlying her complaint. Thus, Bly-Magee did not establish that she was the original source of the allegations publicly disclosed in *Bly-Magee II*.

### 2.  Public Disclosure Through the California Audit

The disclosure in *Bly-Magee II* extended only through June 1997. There was a further public disclosure, however, of the facts underlying the false claims that Bly-Magee alleged were made between June 1997 and June 30, 1999. That disclosure occurred in a published audit report produced by the California State Auditor and entitled "California's Vocational Rehabilitation Program: Although Federal Requirements Have Contributed to its Rising Costs, by More Effectively Managing the Program, the Department of Rehabilitation Can Better Serve More Californians with Disabilities." The question then arises whether disclosure in that report, issued by a state agency, amounts to a "public disclosure" for purposes of the False Claim Act.

**[4]** Section 3730(e)(4)(A) lists the sources of public disclosure that give rise to a jurisdictional bar when the relator is not an original source of the information. The listed sources can be divided into three categories: (1) "a criminal, civil, or administrative hearing"; (2) "a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation"; and (3) "the news media." *Id.* The California audit report would appear to fall under category (2) as an "administrative . . . report [or] audit." Some doubt arises, however, because the other sources in category (2), such as congressional reports or reports of the Government Accounting Office, refer exclusively to *federal* agency materials.

**[5]** This court has not previously addressed whether an administrative report, audit, or investigation prepared by a state entity (as opposed to the federal government) qualifies as a source of public disclosure under the second category.[3] Two circuits that have addressed the question have reached

---

[3]We have held that state and local administrative hearings can qualify as sources of public disclosure under the first category. *A-1 Ambulance*, 202 F.3d at 1243-44.

opposite conclusions. In *United States ex rel. Dunleavy v. County of Delaware*, 123 F.3d 734, 745 (3d Cir. 1997), the Third Circuit applied the doctrine of *noscitur a sociis* and held that, because the word "administrative" is placed between "congressional" and "Government Accounting Office," when read with the word "report" it "refers only to those administrative reports that originate with the federal government." *Id.* In *Hays v. Hoffman*, 325 F.3d 982, 988 (8th Cir. 2003), the Eighth Circuit rejected *Dunleavy* and concluded that Medicaid audits prepared by a state agency are public disclosures within the meaning of the Act. We agree with the Eighth Circuit and now hold that the second category of sources includes non-federal reports, audits, and investigations.[4]

**[6]** Even when it is read literally, the language of § 3730(e)(4)(A) does not compel a conclusion that "administrative" in category (2) means "federal administrative" — a phrase that Congress could have used but did not. The words "congressional" "administrative" and "Government Accounting Office" are separated by commas and the conjunction "or." *Id.* Accordingly, each word may be read as a separate modifier for the nouns that follow. *See generally Flora v. United States*, 362 U.S. 145, 150 (1960) (confirming that grammar can be relevant to statutory interpretation). As long as this reading of the plain language produces a reasonable interpretation consistent with the rest of the statute, it should control. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (explaining that the process of statutory interpretation

---

[4]In holding in *A-I Ambulance* that category (1) included state and local administrative hearings as sources of disclosure, we distinguished *Dunleavy* as dealing with category (2). 202 F.3d at 1244-45. We did state, however, that *Dunleavy* buttressed our conclusion because one may presume that Congress intended different contexts in repeating "administrative" in the two clauses. *See id.* at 1245. We nevertheless did not purport to construe category (2) authoritatively in *A-1 Ambulance*, but simply observed that if *Dunleavy* was correctly decided that circumstance would lend additional support to the statutory interpretation adopted in *A-1 Ambulance*.

ceases if the language is plain and " 'the statutory scheme is coherent and consistent' ") (citation omitted).

This interpretation is consistent with our holding in *A-1 Ambulance* that state and local administrative hearings are sources of public disclosure. 202 F.3d at 1244. Indeed, the statute would seem to be inconsistent if it included state and local administrative hearings as sources of public disclosures and then, in the next breath, excluded state administrative reports as sources. The purpose of requiring public disclosures to come from these sources is to deter opportunistic relators from filing *qui tam* suits based on information already known to the federal government. *See Wang v. FMC Corp.*, 975 F.2d 1412, 1418-19 (9th Cir. 1992) (explaining the history of the 1986 amendments to the False Claims Act that created these categories). The federal government is no less likely to obtain information from a state administrative audit than it is from a state administrative hearing.

**[7]** The likelihood that the information will be brought to the federal government's attention is heightened in cases like this where the audited program is connected significantly to federal regulations and funds. *See Hays*, 325 F.3d at 989 (noting that a state investigation into Medicaid fraud can lead to federal enforcement actions because Medicaid is a heavily regulated federal program). CDR primarily administers the Vocational Rehabilitation Program, supported by both federal and state funds and authorized by the federal Rehabilitation Act of 1973, 29 U.S.C. § 504, as amended 29 U.S.C. § 794. California is required to submit annual reports to the federal government on the administration of the program. 29 U.S.C. § 721(a)(15). California also must create a State Rehabilitation Council, *id.* § 725(a)(1), that provides progress reports to the federal government. *Id.* § 725(c)(2)(B). Essentially, CDR's operation depends on federal funding and compliance with federal regulations. It thus is similar to the Medicaid program in *Hays*. *See* 325 F.3d at 989 (explaining the significant federal regulation and cooperation for Medicaid). In light of

the federal government's significant involvement with the Vocational Rehabilitation Program, it is just as likely that the government would become aware of fraud through a state audit as through a state hearing.

Finally, our interpretation of § 3730(e)(4)(A) does not create the anomalous situation feared by the court in *Dunleavy*. *See* 123 F.3d at 745. There, the Third Circuit expressed concern that state and local governments that are committing fraud might artfully craft reports or audits sufficient to constitute disclosure under the False Claims Act but insufficient to alert the federal government to the fraud. *Id.* The court feared that legitimate *qui tam* suits thus could be barred on the ground that the allegations were disclosed in reports or audits produced by the entity accused of fraud. *Id.* This fear is unfounded in this case because the State Auditor is an entity independent of CDR. The fear is unfounded in general because it is unlikely that an agency trying to cover up its fraud would reveal the requisite "allegations or transactions" underlying the fraud in a public document. The public disclosure of "mere information" relating to the claims is insufficient to trigger a jurisdictional bar to a False Claims suit; the "material elements of the allegedly fraudulent 'transaction' " must be disclosed. *A-1 Ambulance*, 202 F.3d at 1243 (quoting *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1473 (9th Cir. 1996)). Even if such a fear were well-founded, it would extend equally to state administrative hearings, which can be sources of public disclosure under the first category. Thus, the concern that doctored state reports will bar legitimate *qui tam* actions is an insufficient basis for distinguishing between state hearings and state audits, reports, and investigations.

In sum, our holding that the California administrative audit is a source of public disclosure is supported by § 3730's text,

is consistent with *A-1 Ambulance*, and accomplishes the goals of the jurisdictional bar.[5]

**[8]** The allegations upon which Bly-Magee's present lawsuit is based are clearly set forth in the State Auditor's report, which discusses CDR's administration until June 30, 1999. The audit thus publicly disclosed the allegations.

**[9]** For the same reasons that Bly-Magee failed to establish that she was an original source of the disclosure in *Bly-Magee II*, she failed to establish that she was an original source of the information in the State Auditor's report. The district court accordingly lacked jurisdiction to entertain any of Bly-Magee's false claims allegations relating to events occurring on or before June 30, 1999.

## 3.    Bly-Magee's Allegations After June 30, 1999

**[10]** Bly-Magee alleges in her complaint, however, that the false claims continued through the 1999-2000 fiscal year, which ended June 30, 2000. We conclude, therefore, that on the present record the district court appears to have had jurisdiction over allegations in the complaint of false claims occurring after June 30, 1999, because they were not publicly disclosed.

**[11]** We accordingly reverse the dismissal of those portions of the complaint alleging the making of false claims after June 30, 1999. We remand for further proceedings regarding those

---

[5]Our recent decision in *United States ex rel. Haight v. Catholic Healthcare West*, 445 F.3d 1147 (9th Cir. 2006), has no bearing on this holding. In that case, we observed in a footnote that the first and second categories in § 3730(e)(4)(A) are "a form of work product originating with the government" and that "[t]he contents of those sources is expected to be well-known to the government." *Id.* at 1153 n.3. Although the government at issue in *Haight* was the federal government, the question of whether these categories were limited to federal government work products was not before the *Haight* panel.

allegations. We note that the complaint's allegations of false claims made after June 30, 1999, are exceedingly general, and our remand does not foreclose the district court from further actions to clarify the complaint and to ensure that false claims made after this date are indeed subjects of the complaint. We also express no opinion regarding the sufficiency of the allegations under Fed. R. Civ. P. 9(b) — a question not reached by the district court.

Each party will bear its own costs on this appeal.

The judgment of the district court is **AFFIRMED in part, REVERSED in part, and REMANDED.**