In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3383

UNITED STATES OF AMERICA ex rel.
TODD HEATH,

*Plaintiff/Relator-Appellant*,

*v.*

WISCONSIN BELL, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:08-cv-00724 — **Lynn Adelman**, *Judge.*

ARGUED APRIL 7, 2014 — DECIDED JULY 28, 2014

Before WOOD, *Chief Judge*, and KANNE and SYKES, *Circuit Judges*.

KANNE, *Circuit Judge*. Relator Todd Heath filed this *qui tam* complaint under the False Claims Act. Heath alleged that defendant Wisconsin Bell was overcharging school districts for telecommunications services it provided under the Education Rate Program (the "E-Rate Program"), a federal subsidy program. He discovered that certain schools received more

favorable pricing than others, which allowed Wisconsin Bell to receive more federal subsidies than it was due. Heath also learned that Wisconsin Bell offered an even lower price to the Wisconsin Department of Administration ("DOA"), a price which ought to have been conferred to the school districts. The district court held that it did not have jurisdiction to hear the case, as the complaint was based upon publicly disclosed information in the form of the contract with the DOA; namely their website. We reverse and remand for further proceedings.

## I. BACKGROUND

We first note that this case is still in the jurisdictional phase of this litigation and therefore, to the extent that these facts are disputed, we consider them in the light most favorable to Heath.

This case involves the Educational Rate Program, a federal subsidy program authorized by the Telecommunications Act of 1996. The Federal Communications Commission, the organization responsible for implementing the E-Rate Program, established the Universal Service Administrative Company ("USAC"), a private non-profit corporation, to administer the E-Rate Program. The USAC provides subsidies to eligible school districts for the cost of telecommunication services.

As a condition of participating, telecommunication providers have a statutory duty to charge "rates less than the amounts charged for similar services to other parties." 47 U.S.C. § 254(h)(1)(B). Furthermore, the obligation to offer schools the best pricing is set forth in the FCC regulations, which maintain that providers must offer schools the "lowest corresponding

price" ("LCP") for their services. The LCP is defined as the "lowest price that a service provider charges to non-residential customers who are similarly situated to a particular school, library, or library consortium for similar services." 47 C.F.R. § 54.500(f).

Since 1998, Heath has operated a business that audits telecommunications bills to identify improper charges. His company was retained by several Wisconsin school districts to perform these services. By 2006, Heath ascertained through extensive review of the charges administered by Wisconsin Bell that certain schools paid much higher rates than others for the same telecommunications services. As a direct result, many Wisconsin school districts did not receive the benefit of the LCP and the federal government paid subsidies that were substantially greater than they should have been.

In 2007, upon further investigation, Heath discovered that the overcharges were more substantial than originally antici-pated because Wisconsin Bell did not provide the school districts the benefit of certain favorable pricing offered to state departments, agencies, universities, and other users under a contract between Wisconsin Bell and the DOA titled the Voice Network Services Agreement ("VNS Agreement"). The VNS Agreement represented the rates the districts should have been charged as all of the school districts were "similarly situated" to other government agencies that received the prices charged to the DOA. *See* 47 C.F.R. § 54.500(f) (requiring that schools be charged at rates equal to or lower than those charged to "similarly situated" non-residential customers for "similar services").

Heath informed Wisconsin Bell of the discrepancy, but it nonetheless refused to provide the more favorable pricing. Soon thereafter, Heath discovered more information regarding the DOA pricing on the DOA's website, including the VNS Agreement itself, and continued to press Wisconsin Bell for the better pricing. Wisconsin Bell granted the DOA pricing to a small number of schools, but denied it to others. Heath then sent an open records request to the DOA, but received no additional information beyond that which was available on the DOA website, i.e. the VNS Agreement.

Heath filed this *qui tam* lawsuit in 2008. He alleged that Wisconsin Bell fraudulently overcharged school districts, libraries and the United States for telecommunication services. The United States declined to intervene, following three years of investigating the claim.

The district court granted Wisconsin Bell's motion to dismiss for lack of subject matter jurisdiction. It held that the public disclosure bar applied, which prohibits courts from exercising jurisdiction over claims based on public disclosures. It also found that Heath was not saved by the original source exception, which permits an individual to pursue a claim based on publicly disclosed information if he or she is the original source of the information. The court held that Heath's reliance on the DOA's website in obtaining the information was determinative and held the bar applicable.

## II. ANALYSIS

The district court found that the public disclosure bar applied to Heath's *qui tam* case and it therefore lacked jurisdict-

ion; a decision that we review *de novo*. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

The False Claims Act permits "both the Attorney General and private *qui tam* relators to recover from persons who make false or fraudulent claims for payment to the United States." *Graham Cnty. Soil and Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 283 (2010). Yet it also seeks to prevent parasitic lawsuits by "opportunistic plaintiffs who have no significant information to contribute of their own[.]" *Id*. at 294. To this effect, Congress implemented the public disclosure bar, which precludes suits "based upon the public disclosure of allegations or transactions … in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is the original source of the information." Addendum 1, 31 U.S.C. § 3730(e)(4)(A) (effective Oct. 27, 1998 – Mar. 22, 2010).[1]

Determining whether to apply the public disclosure bar requires the court to complete a three-step inquiry. "First, it examines whether the relator's allegations have been 'publicly disclosed.' If so, it next asks whether the lawsuit is 'based upon' those publicly disclosed allegations. If it is, the court determines whether the relator is an 'original source' of the

---

[1] The Patient Protection and Affordable Care Act, Pub. L. 111-148, 124 Stat. 119 (2010), amended the public disclosure provision, but the amendment was not retroactive. *Graham Cnty.*, 559 U.S. at 283 n.1. Therefore, the version of the statute in place at the time Heath filed this suit applies. *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 131 S. Ct. 1885, 1889 n.1 (2011).

information upon which his lawsuit is based." *Glaser v. Wound Care Consultants Inc.*, 570 F.3d 907, 913 (7th Cir. 2009) (citations omitted). As we do not believe that Heath's allegations were "based upon" a public disclosure, we need not address the first or third steps.

The district court found that the posting of the VNS Agreement on the DOA website and providing Heath with a copy constituted a public disclosure. The court found that this was sufficient to put the Federal Government on notice of a potential fraud. It then found that Heath's allegations were "based upon" the VNS Agreement because he relied upon the agreement to prove that Wisconsin Bell was not offering the lowest price. We disagree.

We have "previously interpreted the phrase 'based upon [a] public disclosure' to mean 'substantially similar to publicly disclosed allegations [or transactions].'" *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 828 (7th Cir. 2013) (citing *Glaser*, 570 F.3d at 920). And we have held that "based upon" does not mean "solely based upon," for a *"qui tam* action even partly based upon publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transactions." *Glaser*, 570 F.3d at 920 (citing *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552 (10th Cir. 1992)). In *Glaser*, we found that the relator's claims derived from a previously published report to which she added extra details. This did not pass the public disclosure bar, however, because the relator's complaint merely added specificity (and maybe a few additional instances) to the allegations already detailed in the public investigation. *Id*. at 920–21. Such is not the case here. Heath's

allegations, though they may rely in part on the VNS Agreement, required independent investigation and analysis to reveal any fraudulent behavior.

Wisconsin Bell urges us to consider, as the district court did, that the posting of the contract on the DOA website alone suffices to trigger the public disclosure bar. But the VNS Agreement, whether publicly disclosed or not (a fact that we need not address here), is evidence of only one transaction that had to be supplemented with knowledge of other pricing—in this case Heath's insight regarding the pricing received by the school districts—to establish fraud. No one could view the agreement in a vacuum and realize that Wisconsin Bell was overcharging school districts. While the VNS Agreement may provide a measure for the LCP—or in this case damages—it certainly cannot, *per se*, establish fraudulent behavior. *See U.S. ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 680 F.3d 933, 935–36 (7th Cir. 2012) (public disclosure bar did not apply when relator was able to piece together specific information despite the presence of a corresponding government report).

Moreover, we have cautioned against the use of the public disclosure bar at a "high level of generality." *Id*.; *see also Leveski*, 719 F.3d at 832; *Glaser*, 570 F.3d at 936. Heath was contracted to audit various school districts' telecommunication services and found irregularities in the prices charged—some schools were charged much higher rates than others, i.e. the LCP was not being administered properly. Upon further investigation, Heath discovered the VNS Agreement. Wisconsin Bell suggests that the sole piece of information that Heath relied upon for his allegations was the agreement, which proved that Wisconsin Bell was not offering the LCP. Yet this ignores Heath's allegati-

on that he discovered that various school districts were receiving disparate, higher pricing than other districts *prior* to the discovery of the VNS Agreement. *See U.S. ex rel. Baltazar v. Warden*, 635 F.3d 866, 868 (7th Cir. 2011) (Government Accountability Office reports did "not disclose the allegations or transactions on which a suit such as [relator]'s is based."). Absent Heath's extensive knowledge of the schools's telecommunication pricing, the VNS Agreement serves only to identify that a contract with a lower rate than that which was being offered existed. What was required was knowledge of other "similarly situated" entities and the price they were being charged, which is exactly what Heath provided.

Heath is not one of the "opportunistic plaintiffs who have no significant information to contribute of their own." *Graham Cnty.*, 559 U.S. at 294. Through his own investigation and initiative, Heath established that schools were being charged prices well above the LCP—both by comparing rates between the schools and subsequently the VNS Agreement—and brought "genuinely new and material information" to the government's attention. *Goldberg*, 680 F.3d at 936. Accordingly, his allegations are not precluded by the public disclosure bar.

### III. CONCLUSION

The district court erred in finding that it lacked subject matter jurisdiction over Heath's case. Heath's allegations were not based on the VNS Agreement within the meaning of the False Claims Act and therefore the public disclosure bar was not warranted. For the foregoing reasons, we REVERSE the district court's decision and REMAND the case for further proceedings consistent with this opinion.