In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1867

UNITED STATES, *et al.*, *ex rel.* AUGUST BOGINA III,

*Plaintiffs-Appellants*,

*v.*

MEDLINE INDUSTRIES, INC., *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 5373 — **John J. Tharp, Jr.**, *Judge*.

ARGUED DECEMBER 10, 2015 — DECIDED JANUARY 4, 2016

Before POSNER, MANION, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. This appeal is from the dismissal of a suit filed in 2011 under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, by a private individual named Bogina on behalf of the United States. He seeks a bounty for exposing fraud that the defendants, Medline Industries and the Tutera Group (and Tutera affiliates unnecessary to discuss), have allegedly perpetrated against both the federal government, see 31 U.S.C. § 3730, and several state governments on

whose behalf Bogina is also suing (they are the "*et al.*" in the caption). He bases federal jurisdiction of the state claims on the supplemental jurisdiction of the federal courts. See 31 U.S.C. § 3732(b); 28 U.S.C. § 1367. The district judge dismissed the federal claims as being too similar to those in a prior suit against Medline to authorize Bogina's suit. The judge then relinquished jurisdiction over the state claims to the state courts, see 28 U.S.C. § 1367(c); about those claims we need say no more.

Medline is a major seller of medical equipment to institutions reimbursed by Medicare and similar federal programs for part of the price they pay for their medical supplies. The Tutera Group is a chain of nursing homes that is a Medline customer. Bogina claims to have discovered through his business associate Michael Tutera, a former member of the ownership group of the Tutera Group and brother of one of its current principals, that Medline gives bribes and kickbacks to the Tutera Group to induce it to purchase from Medline.

We'll see that Medline has been sued before for engaging in such conduct, though until the present suit the Tutera Group had not been specifically accused of being one of Medline's partners in fraud. Some of the corrupt payments that Medline has been accused of making are in the form of lump-sum cash payments, and thus conventional bribes; others are kickbacks—returning some of the purchase price to the purchaser off book, thus inducing him to buy from Medline rather than from a competitor. Whether bribes or kickbacks, such payments operate as discounts to Medline customers, and discounts are normally an innocent means of competing. But not discounts in the form of bribes and kick-

backs to government contractors. For then the purchaser of a discounted item will seek reimbursement from the government of the authorized percentage of the price charged the purchaser (Tutera being the purchaser identified by Bogina) by the seller (Medline)—including the part of that price that the seller rebates to the purchaser. And as a result the government makes inflated reimbursements and medical providers are induced to purchase from the discounting seller even if substitute products of the same or higher quality are available at lower prices from other sellers. In submitting these inflated claims for reimbursement the purchasers also falsely certify compliance with federal anti-bribery and anti-kickback laws.

So suppose the nominal price of a piece of equipment sold by Medline is $100,000 but Medline kicks back $10,000 to the buyer. The buyer's cost is only $90,000 but he would report it to the government as $100,000 and thus receive a greater reimbursement than he was entitled to. That is fraud and a person (or a firm or other institution) violates the False Claims Act if he "knowingly presents, or *causes to be presented*, a false or fraudulent claim for payment or approval" by the government. 31 U.S.C. § 3729(a)(1)(A) (emphasis added). Bogina contends that at Medline's behest the Tutera Group submitted to the federal government fraudulent claims for reimbursement. If this is correct, both the Tutera Group and Medline defrauded the government.

Bogina is thus suing as a volunteer on behalf of the federal government—a kind of private attorney general—in the hope of course of being handsomely compensated if the suit succeeds. (We'll encounter such compensation shortly.) He thus is a bounty hunter, and federal law places some obsta-

cles in the path of its bounty hunters. Thus 31 U.S.C. § 3730(e)(4)(A), as it read during the kickback scheme of which Bogina accuses the defendants (2003 to 2009), allowed a private person to bring a false-claims suit on behalf of the government "based on public allegations" only if he was "an original source of the information." A 2010 amendment changed "based on public allegations" to "if substantially the same allegations … as alleged in the action or claim [had been] publicly disclosed." But this was not a significant change, both formulas being aimed at barring "'me too' private litigation [that] would divert funds from the Treasury" to bounty seekers whose efforts had duplicated those of the government or an earlier bounty seeker. *United States ex rel. Goldberg v. Rush University Medical Center*, 680 F.3d 933, 934 (7th Cir. 2012); see also *Glaser v. Wound Care Consultants Inc.*, 570 F.3d 907, 919–20 (7th Cir. 2009); *United States ex rel. Gear v. Emergency Medical Associates of Illinois, Inc.*, 436 F.3d 726, 729 (7th Cir. 2006). "[P]ublic disclosures bar *qui tam* actions against any defendant who is directly identifiable from the public disclosures," even if not specifically named. *Id.* (The phrase "*qui tam*" is short for *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, meaning "who [*qui*] sues in this matter for the king as well as [*tam*] for himself." The "for himself" part is the hoped-for bounty.)

Before the 2010 amendment "original source" was defined as "an individual who has direct and independent knowledge of the information on which the allegations [in his complaint] are based." 31 U.S.C. § 3730(e)(4)(B) (1994). The definition was unsatisfactory, because what "direct" adds to "independent" as a modifier of "knowledge" is inscrutable. Could "direct" mean that even reliable hearsay cannot be deemed a source of knowledge, that it must be

classified as indirect? There is the hint of a positive answer in *Leveski v. ITT Educational Services, Inc.*, 719 F.3d 818, 837 (7th Cir. 2013). (*Glaser v. Wound Care Consultants Inc.*, *supra*, 570 F.3d at 921 n. 8, recounts the struggle of other circuits to give meaning to "direct.") Fortunately the 2010 amendment redefined "original source" to mean "an individual who … has knowledge that is independent of and materially adds to the publicly disclosed allegations … and who has voluntarily provided the information to the Government before filing an action under this section." Although this is a considerable improvement, Bogina claims to have been an "original source" both before and after the change in the statutory language; he claims in other words to have fit both definitions.

We incline to the view that because the earlier definition is inscrutable as well as skimpier than the current one, the current one should be deemed authoritative regardless of when a person claiming to be an original source acquired his knowledge. "[C]oncerns about retroactive application are not implicated when an amendment … is deemed to clarify relevant law rather than effect a substantive change in the law." *Middleton v. City of Chicago*, 578 F.3d 655, 663 (7th Cir. 2009) (quoting *Piamba Cortes v. American Airlines, Inc.*, 177 F.3d 1272, 1283–84 (11th Cir. 1999)). That's a good description of the amendment to subsection (B) of section 3730(e)(4).

We are mindful of cases that say that because the 2010 amendment does not state that it is retroactive, the pre-2010 version of the statute governs conduct that occurred in that era while the new version governs only more recent conduct. See e.g., *Leveski v. ITT Educational Services, Inc., supra,* 719 F.3d at 828; *United States ex rel. Goldberg v. Rush Universi-*

*ty Medical Center, supra,* 680 F.3d at 934; *United States ex rel. Baltazar v. Warden,* 635 F.3d 866, 867 (7th Cir. 2011). These cases take off from a footnote—inapposite to subsection (B), however—in *Graham County Soil & Water Conservation District v. United States ex rel. Wilson,* 559 U.S. 280, 283 n. 1 (2010), in which the Supreme Court said that the 2010 amendment of 31 U.S.C. § 3730(e)(4)(A)—the public-disclosure provision—was not retroactive.

But from the context it is apparent that the Court in *Graham County* was referring to a substantive change (unlike the innocuous change we noted earlier) in subsection (A) made by the 2010 amendment—a change to what constitutes a "public disclosure." 31 U.S.C. §§ 3730(e)(4)(A)(i), (ii) (2010). Originally subsection (A) had stated: "No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation … unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." This was changed by the amendment to: "The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation … unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." In *Graham County* the question was whether the term "administrative

hearing" in the pre-amendment version was limited to a federal administrative hearing, and the Court held that it was not. The amended statute, however, explicitly limits the term to *federal* administrative hearings—a significant narrowing and clearly a substantive change to which the Court properly refused to give retroactive effect.

Our cases, cited above, had not noted that in contrast to the substantive change in subsection (A), subsection (B)—the provision defining "original source"—needed and received clarification in the 2010 amendment; and because that amendment, insofar as it alters subsection (B), is a clarifying rather than a substantive amendment, it is not subject to a retroactivity bar.

Enter now Sean Mason, an employee of Medline who had in 2007, four years before Bogina filed the present suit, filed a very similar suit, charging Medline with having given bribes and kickbacks to purchasers of its medical equipment who provided services reimbursed by Medicare and Medicaid. Without admitting liability Medline had settled with the government (on whose behalf, of course, the suit had been brought) for a whopping $85 million in compensation (and an additional $6 million in attorneys' fees), out of which the government paid Mason a generous bounty—$23.4 million.

Bogina claims to have learned from his pal in the Tutera Group that the Tutera Group had received kickbacks from Medline. Unsurprisingly his complaint is very similar to Mason's, but he argues that there are three critical differences. The first is that the Tutera Group was not mentioned in Mason's complaint, which focused on Medline's alleged bribery of and kickbacks to its hospital customers; nursing homes

(which Mason sometimes called "nursing facilities") were mentioned only in passing—but they were mentioned. Second, the settlement with Mason released the federal government's civil claims against Medline (that is, terminated Medline's liability in exchange for its paying the government pursuant to the terms of the settlement) only for false reports submitted to Medicare Part A and Medicaid, while Bogina alleges that false reports were also made by Medline customers, such as the Tutera Group, to Medicare Part B, to state-funded Medicaid, and to TRICARE (a military healthcare program). Third, Bogina alleges that the fraud is continuing, while Mason's complaint contained allegations of fraud only through 2009, and the Mason settlement released claims only through May 31, 2010.

But these differences between the two suits are unimpressive. It was common knowledge that Medline sold to nursing homes as well as to hospitals, so if it provided kickbacks to the latter, why not to the former as well? Bogina is not allowed to proceed independently if he merely "adds details" to what is already known in outline. *United States ex rel. Goldberg v. Rush University Medical Center, supra,* 680 F.3d at 934. And why offer bribes and kickbacks for products whose buyers would be reimbursed for the cost (or part of the cost) by Medicare Part A, but not for products covered by other federal programs? The settlement agreement remarks that "unallowed costs" may have been submitted to TRICARE even though TRICARE was not mentioned in the release of liability. The government was thus on notice of the possibility of a broader bribe-kickback scheme before Bogina sued. Had it wanted to broaden the case against Medline beyond the Mason settlement it could have gone after, among other Medline customers, nursing-home companies such as

the Tutera Group that received (if Bogina is correct) Medline kickbacks. But having settled its claims against Medline for a large sum the government may have thought the company had learned its lesson and would cease providing bribes or kickbacks to nursing homes or any other of its customers. Moreover, a settlement is a compromise; and it is notable that among the claims that the government released as part of the Mason settlement were some of the very claims alleged in Bogina's complaint. Indeed the only significant information that appears in Bogina's complaint but not in Mason's is the name "Tutera Group" and references to government health care programs besides Medicare Part A and Medicaid. Neither body of information "materially add[ed] to the publicly disclosed allegations" against Medline—the allegations in Mason's complaint.

Bogina's complaint is not saved by its allegations that the fraud continues to the present day, because those allegations are "on information and belief." As we explained in another false-claims bounty-hunting case, *United States ex rel. Grenadyor v. Ukrainian Village Pharmacy, Inc.*, 772 F.3d 1102, 1105–08 (7th Cir. 2014), it is because a public accusation of fraud can do great damage to a firm before the firm is exonerated in litigation (should the accusation prove baseless) that Rule 9(b) of the Federal Rules of Civil Procedure requires that "in alleging fraud … a party must state with particularity the circumstances constituting fraud." Allegations based on "information and belief" thus won't do in a fraud case—for "on information and belief" can mean as little as "rumor has it that … ."

AFFIRMED