In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3473

GEORGE BELLEVUE,

*Plaintiff-Appellant*,

*v.*

UNIVERSAL HEALTH SERVICES OF
HARTGROVE, INCORPORATED, doing
business as HARTGROVE HOSPITAL,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 5314 — **Thomas M. Durkin**, *Judge.*

ARGUED FEBRUARY 15, 2017 — DECIDED AUGUST 8, 2017

Before BAUER, EASTERBROOK, and HAMILTON, *Circuit Judges*.

BAUER, *Circuit Judge.* Relator and plaintiff-appellant George
Bellevue filed a *qui tam* action under the False Claims Act
(FCA), 31 U.S.C. § 3729 *et seq.*, and its Illinois analog, the
Illinois False Claims Act (IFCA), 740 Ill. Comp. Stat. 175/1

*et seq.*, on behalf of the United States and the State of Illinois against defendant-appellee Universal Health Services of Hartgrove, Incorporated ("Hartgrove"). Bellevue argues that Hartgrove violated the FCA under a number of theories, including false certification and fraudulent inducement. The district court granted Hartgrove's motion to dismiss the complaint for failure to state a claim of fraud with particularity as required by Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## I. BACKGROUND

Hartgrove is a psychiatric hospital that primarily serves children with mental illness. It is enrolled with the Illinois Department of Healthcare and Family Services to receive reimbursement for treating patients through Medicaid. On April 8, 2004, Hartgrove signed a Provider Enrollment Application certifying that it understood "that knowingly falsifying or wilfully withholding information may be cause for termination of participation" in the State's Medical Assistance Program. It further certified that it was in compliance with all applicable federal and state laws and regulations.

On the same date, Hartgrove signed an Agreement for Participation in the Medical Assistance Program, in which it agreed to comply with all federal and state laws and regulations. Hartgrove agreed "to be fully liable for the truth, accuracy and completeness of all claims submitted … to the Department […] for payment." It also promised that "all services rendered on or after [the effective date of the agreement] were rendered in compliance with and subject to the terms and conditions" of the agreement. Upon receipt of

Medicaid reimbursements, Hartgrove is required to certify that the services provided in the billing information were actually provided.

Hartgrove's license, issued by the Illinois Department of Public Health, permits it to maintain 150 beds for patients with acute mental illness, but it actually maintains 152 beds. Prior to September 30, 2009, Hartgrove was permitted to maintain 136 beds for acute mental illness patients. Newly admitted adolescent patients suffering from acute mental illness are placed in a room used for daytime group therapy, known as a "dayroom," rather than patient rooms. These patients sleep on rollout beds until a patient room becomes available. This occurred on 13 separate occasions between January 1, 2011, and June 3, 2011. Hartgrove submitted claims for inpatient care to Medicaid on behalf of these patients even though they were not assigned a room.

Bellevue joined the Hartgrove staff in October 2009, serving as a nursing counselor until October 2014. He contends that Hartgrove knowingly submitted fraudulent claims for reimbursement to Medicaid by admitting new patients with acute mental illness in excess of its 150-bed capacity and permitting these patients to sleep in the dayroom rather than in a private room. He further contends that Hartgrove certified, "either explicitly or implicitly," that it was in compliance with licensing standards contained in state law, rules, and regulations, even though it was over capacity. *See* Ill. Admin. Code tit. 77, § 250.230(b). Prior to filing his complaint, Bellevue voluntarily provided the information on which his allegations are based to federal and state government authorities.

Bellevue filed suit on August 5, 2011; the United States and the State of Illinois declined to intervene. Hartgrove moved to dismiss the complaint under Rules 12(b)(1), 12(b)(6), and 9(b), on December 29, 2014. Specifically, Hartgrove argued that Bellevue's suit was foreclosed by the FCA's public-disclosure bar, which deprived the district court of jurisdiction.[1] It also argued that Bellevue's complaint failed on the merits. The district court disagreed with Hartgrove's jurisdictional argument, but agreed that Hartgrove failed on the merits; the court granted the motion without prejudice on April 24, 2015.

Bellevue filed an amended complaint on June 26, 2015. Hartgrove moved to dismiss on July 13, 2015, renewing its arguments from the previous motion. The district court found that Bellevue failed to state a claim, and the court granted the motion with prejudice on October 5, 2015. Bellevue filed a motion to reconsider in light of the United States Supreme Court's decision in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1999 (2016), in which the Court

---

[1] In support of its motion, Hartgrove attached a March 23, 2009, letter from the Illinois Department of Public Health and a May 5, 2009, letter and report from the U.S. Centers for Medicare & Medicaid Services that disseminated findings from two IDPH audits conducted in March 2009. IDPH found that Hartgrove's patient count exceeded the number it was permitted under its license on both audit dates, and therefore was "over census." The CMS report noted that Hartgrove was over census on at least 52 separate occasions between December 3, 2008, and February 28, 2009. These materials were properly before the district court because they were submitted to determine whether subject-matter jurisdiction existed. *See Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (citation omitted).

held that an implied false certification theory is a viable basis for liability under the FCA. The district court denied the motion on October 20, 2015, finding that Bellevue's amended complaint failed to state a claim for implied false certification. This appeal followed.

## II. DISCUSSION

The FCA permits "both the Attorney General and private *qui tam* relators to recover from persons who make false or fraudulent claims for payment to the United States." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 (2010). To establish civil liability under the FCA, a relator generally must show that "(1) the defendant made a statement in order to receive money from the government; (2) the statement was false; (3) the defendant knew the statement was false; and (4) the false statement was material to the government's decision to pay or approve the false claim." *United States ex rel. Marshall v. Woodward, Inc.*, 812 F.3d 556, 561 (7th Cir. 2015) (citation omitted).[2]

The FCA also seeks to prevent parasitic lawsuits by "opportunistic plaintiffs who have no significant information

---

[2] The IFCA "closely mirrors the FCA," and to date we have not found any difference between the statutes that is material to a jurisdictional or merits analysis. *United States ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 704 n.5 (7th Cir. 2014); *see also United States ex rel. Kennedy v. Aventis Pharms., Inc.*, 512 F. Supp. 2d 1158, 1163 n.2 (N.D. Ill. 2007) ("Case law regarding the FCA is also applicable to the [IFCA]."); *Scachitti v. UBS Fin. Servs.*, 831 N.E.2d 544, 557–59 (Ill. 2005) (applying FCA case law to a jurisdictional analysis of the IFCA). The district court applied its analysis of the FCA equally to the IFCA claims. We will proceed in the same fashion.

to contribute of their own … ."*Graham Cnty.*, 559 U.S. at 294 (citation omitted). In furtherance of this goal, Congress enacted the public-disclosure bar because "[w]here a public disclosure has occurred, [the relevant governmental] authority is already in a position to vindicate society's interests, and a *qui tam* action would serve no purpose." *United States ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 495 (7th Cir. 2003) (citation omitted).

On appeal, Hartgrove argues that the district court erred in its finding that the FCA's public-disclosure bar contained in 31 U.S.C. § 3730(e)(4) did not apply to Bellevue's claims; a decision that we review *de novo. United States ex. rel. Heath v. Wis. Bell, Inc.*, 760 F.3d 688, 690 (7th Cir. 2014) (citation omitted). In 2007, the Supreme Court held that § 3730(e)(4) is a jurisdictional requirement that must be addressed before a court can reach the merits of the FCA claims. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467–70 (2007). Therefore, we address this issue at the outset.

Congress amended the public-disclosure bar in March 2010. Because Bellevue's allegations extend from August 5, 2005, to the present,[3] covering both pre- and post-amendment time periods, we examine both versions of the statute.

---

[3]  Although Bellevue contends that Hartgrove submitted false claims from August 2001 to the present, the district court dismissed Bellevue's claims that arose prior to August 5, 2005, due to the FCA's six-year statute of limitations. *See* 31 U.S.C. § 3731(b)(1). It also dismissed Bellevue's claims in his individual capacity. Bellevue does not challenge either action by the district court, so we need not address these claims further.

Prior to the 2010 amendments, § 3730(e)(4) provided:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a … congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation … unless … the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

After the 2010 amendments, § 3730(e)(4) provides:

> (A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed … in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation … unless … the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who … has knowl-

> edge that is independent of and materially adds
> to the publicly disclosed allegations or transac-
> tions, and who has voluntarily provided the
> information to the Government before filing an
> action under this section.[4]

As an initial matter, we have noted that Congress removed the phrase "[n]o court shall have jurisdiction over an action under this section" and replaced it with "[t]he court shall dismiss an action or claim under this section" in the 2010 amendment to § 3730(e)(4)(A). *Absher*, 764 F.3d at 706. The Supreme Court's holding in *Rockwell* regarding the jurisdictional nature of the public-disclosure bar was based on the inclusion of the phrase "[n]o court shall have jurisdiction over an action under this section." *Id*. (citing *Rockwell*, 549 U.S. at 467). Because this language has been removed from the statute, it is unclear whether the language of the 2010 amendment is jurisdictional. *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 271 n.5 (7th Cir. 2016). We have previously noted that other circuits have found that the language of the 2010 amendment is not jurisdictional, but we have declined to decide this issue in our circuit. *Id*. Because some of Bellevue's allegations occurred pre-amendment, we address the public-disclosure bar as a jurisdictional one. *See id.* (applying the pre-amendment version of § 3730(e)(4)(A), where the contested conduct spanned both pre- and post-amendment time periods).

---

[4]   Shortly after the public-disclosure bar of the FCA was amended, the IFCA was amended and re-codified effective July 27, 2010. The amendments mirror those of the FCA. *See* 740 Ill. Comp. Stat. 175/4 (2010).

In addition, we have held that the amendment to § 3730(e)(4)(A) involved "a change to what constitutes a 'public disclosure,'" and thus is a substantive change that is not retroactive. *United States ex. rel. Bogina, v. Medline Indus., Inc.*, 809 F.3d 365, 369 (7th Cir. 2016) (citation omitted). Consequently, "the pre-2010 version of [§ 3730(e)(4)(A)] governs conduct that occurred in that era while the new version governs only more recent conduct." *Id*. at 368 (collecting cases). However, this change is not significant, as "we have previously interpreted the phrase 'based upon [a] public disclosure' to mean 'substantially similar to publicly disclosed allegations' … ." *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 828 n.1 (7th Cir. 2013) (citation omitted); *see also Bogina*, 809 F.3d at 368 (noting that the change in statutory language is not significant). The current version of the statute expressly incorporates the "substantially similar" standard in accordance with the interpretation of this circuit and most other circuits. *Leveski*, 719 F.3d at 828 n.1.

In contrast to § 3730(e)(4)(A), our cases have found that the amendment to the "original source" definition in § 3730(e)(4)(B) is a clarification rather than a substantive change, and therefore is retroactive. *Bogina*, 809 F.3d at 369; *see also Cause of Action*, 815 F.3d at 283 n.22 (citing *Bogina*, 809 F.3d at 368–69) (applying the 2010 definition of original source to conduct occurring prior to 2010). Because the district court decided the instant case prior to *Bogina* and *Cause of Action*, we take a fresh look to ensure that subject-matter jurisdiction is present.

Hartgrove argues that Bellevue's claims were publicly disclosed by the IDPH and CMS letters and audit report from

March and May 2009. Determining whether to apply the
public-disclosure bar requires the court to complete a three-
step inquiry. First, we examine whether the relator's allega-
tions have been "publicly disclosed." *Cause of Action*, 815 F.3d
at 274 (citation omitted). If so, we next ask whether the lawsuit
is "based upon," *i.e.*, "substantially similar to" the publicly
disclosed allegations. *Id*. (citation omitted). "If it is, the public-
disclosure bar precludes the action unless 'the relator is an
original source of the information upon which the lawsuit is
based.'" *Id*. (citation and brackets omitted). "The relator bears
the burden of proof at each step of the analysis." *Id*. (citation
omitted).

Applying the three-step framework, we first address
whether Bellevue's allegations were publicly disclosed. "[T]he
allegations in a complaint are publicly disclosed when the
critical elements exposing the transaction as fraudulent are
placed in the public domain." *Id*. (citation and quotation marks
omitted). "This definition presents two distinct issues: whether
the relevant information was placed in the public domain, and,
if so, whether it contained the critical elements exposing the
transaction as fraudulent." *Id*. (citation and quotation marks
omitted).

Bellevue does not dispute that the information was in the
public domain; he contends that the letters and audit report
state merely that Hartgrove was over census without any
reference to a knowing misrepresentation of facts, which is a
critical element of fraud. The district court found that the
government had enough information to infer scienter from the
results of its audits. We agree. We have held that the public-
disclosure bar applied in instances "where one can infer, as a

direct and logical consequence of the disclosed information, that the defendant knowingly — as opposed to negligently — submitted a false set of facts to the Government." *Id*. at 279 (citing *Absher*, 764 F.3d at 709 n.10).

Bellevue relies on *Absher*, in which we held that the government's knowledge that the defendant had failed to comply with a patient's standard of care did not necessarily mean that the defendant had knowingly misrepresented its compliance when requesting payments from the government. 764 F.3d at 708–09. As we recognized in *Cause of Action*, decisions regarding a patient's standard of care involve "qualitative judgments," and thus there was an equally plausible inference that the *Absher* defendant's error was a mistake rather than a knowing violation. 815 F.3d at 279. Therefore, it was inappropriate to apply the public-disclosure bar in *Absher*.

Here, as in *Cause of Action*, the audit report and letters provided a sufficient basis to infer that Hartgrove was presenting false information to the government. *See id*. The kind of qualitative judgments at issue in *Absher* are not present in this case. As the district court noted, because Bellevue did not have personal knowledge of Hartgrove's billing practices, his allegations necessarily required him to infer that Hartgrove was knowingly over census. There is no reason that the government could not have made the same inference based on its audits. Therefore, we find that Bellevue's allegations were publicly disclosed.

Moving to the second step, we address whether Bellevue's allegations are substantially similar to the publicly disclosed allegations. There are several factors courts consider in

determining whether this standard is met: whether relators present genuinely new and material information beyond what has been publicly disclosed; whether relators allege "a different kind of deceit"; whether relators' allegations require "independent investigation and analysis to reveal any fraudulent behavior"; whether relators' allegations involve an entirely different time period than the publicly disclosed allegations; and whether relators "supplied vital facts not in the public domain[.]" *Cause of Action*, 815 F.3d at 281 (collecting cases).

The district court found that Bellevue's allegations concerning Hartgrove's conduct through May 5, 2009 (the issuance date of CMS's letter), are substantially similar to the publicly disclosed allegations.[5] However, it found that Bellevue's allegations that Hartgrove continued its billing practices beyond May 5, 2009, involves a different time period. Thus, it concluded that Bellevue's claims concerning conduct after May 5, 2009, are not substantially similar to the publicly disclosed allegations.

We agree with the district court as to Bellevue's allegations through May 5, 2009. Bellevue's complaint describes the same contested conduct and pertains to the same entity. In addition, the time periods overlap. Furthermore, Bellevue did not

---

[5]    Hartgrove correctly points out that the 2010 amendments to § 3730(e)(4)(A), added the qualification that an audit report must be "Federal" in order to qualify as a public disclosure, and the IFCA amendment correspondingly limited public disclosures to "State" audit reports, *see* 740 Ill. Comp. Stat. 175/4 (2010). Therefore, after the 2010 amendments, the May 5, 2009, CMS audit report and letter is relevant to Bellevue's FCA claims, and the March 23, 2009, IDPH audit and letter is relevant to his IFCA claims.

supply any genuinely new and material information in his amended complaint. Bellevue argues that his allegation that Hartgrove *knowingly* exceeded its capacity constitutes new information, but as we stated above, scienter can be inferred from the audit report and letters. Bellevue also argues that he provided new information by alleging that Hartgrove exceeded its capacity as part of its regular business practice as opposed to a temporary measure resulting from an emergency. This is, at best, a conclusory allegation that lacks any factual support. We have found that such conclusory allegations fail to meet the particularity standards required by Rule 9(b), and therefore are insufficient to evade the public-disclosure bar. *See Bogina*, 809 F.3d at 370.

As to Bellevue's post-May 5, 2009, allegations, we must disagree with the district court in light of our recent holding in *Cause of Action*. We recognize that in *Leveski*, we found that the relator's allegations were not substantially similar to those contained in a previous lawsuit because they involved a different time period. *See* 719 F.3d at 829–30. But in arriving at this conclusion, we also considered that the relator's allegations involved wrongdoing by a separate department, pertained to a more sophisticated scheme, and named specific individuals. *See id*. at 830–33.

In *Cause of Action*, we found that although the audit report had considered conduct through 2004, the defendant's conduct in subsequent years was part of its "continuing practice" of misreporting data to the government. 815 F.3d at 278 n.14. We held that the relator's claim of a continuing practice "does not warrant our characterizing [the relator's] allegations as not substantially similar" to the allegations disclosed in the audit

report. *Id.* at 281–82; *see also Bogina*, 809 F.3d at 370 (finding that relator's allegation that the fraud continued to present day, along with other minor details, was an "unimpressive" difference from a previous complaint and did not preclude application of the public-disclosure bar). Here, as in *Cause of Action*, Bellevue's allegations pertain to the same entity and describe the same contested conduct as the publicly disclosed information. Therefore, we find that Bellevue's post-May 5, 2009, allegations, are substantially similar to the publicly disclosed allegations.

Moving to the third step, we ask whether Bellevue was an original source of the information upon which the allegations in his complaint were based. The district court, applying the pre-2010 definition of original source, found that although Bellevue did not allege that he had direct knowledge of Hartgrove's billing practices, it nonetheless could be reasonably inferred that he had acquired direct knowledge through his employment. It also found that Bellevue "materially added" to the publicly disclosed allegations with his personal knowledge of specific instances in which Hartgrove was over census.

After the district court's decision, *Bogina* made clear that the amended definition of "original source" controls. *See* 809 F.3d at 369. Therefore, Bellevue must show that he "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions" and "has voluntarily provided the information to the Government before filing [its] action." 31 U.S.C. § 3730(e)(4)(B) (2010). It is undisputed that Bellevue voluntarily provided information concerning his allegations to the government before filing suit.

In order to possess "independent knowledge," the relator must "have learned of the allegation or transactions independently of the public disclosure." *Cause of Action*, 815 F.3d at 283 (citation omitted). As the district court noted, we have permitted an inference of independent knowledge where the relator had an opportunity to observe the contested conduct. *See Leveski*, 719 F.3d at 838; *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1017 (7th Cir. 1999). However, we need not decide whether Bellevue is entitled to such an inference because he has not "materially add[ed]" to the publicly disclosed allegations.

Bellevue recycles the district court's analysis regarding his material addition to the publicly disclosed allegations. However, this line of reasoning was foreclosed by *Cause of Action*. In that case, we found that because the plaintiff's allegations were "substantially similar to" the publicly disclosed allegations, the plaintiff did not "materially add" to the public disclosure and could not be an original source. 815 F.3d at 283 (citation omitted). This conclusion applies with equal force here, and Bellevue has not provided a reason to diverge from it. Thus, we find that Bellevue is not an original source of the allegations, and his FCA and IFCA claims are precluded by the public-disclosure bar.

### III.  CONCLUSION

The allegations in this case fall within the public-disclosure bar to the FCA, and, therefore, the district court properly dismissed the amended complaint with prejudice. The judgment of the district court is AFFIRMED.